UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WILLIAM D. WILSON,

               Plaintiff,

v.                                                                    Case No.  5:06-cv-187-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,[1]

               Defendant.

_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying her applications for a period of disability,

disability insurance benefits and Supplemental Security Income.  (Doc. 1.)  The

Commissioner has answered (Doc. 3) and both parties have filed briefs outlining their

respective positions.  (Docs. 11 & 12.)  For the reasons discussed below, the

Commissioner's decision is due to be **REVERSED and REMANDED.**

## I.  PROCEDURAL HISTORY

On August 27, 2002, Plaintiff protectively filed applications for SSDI and SSI

benefits claiming a disability onset date of March 1, 2000. (R. 50-53, 68-85.)  Plaintiff's

applications were denied initially (R. 29-30), and upon reconsideration. (R. 32-34.)

Thereafter, Plaintiff timely pursued his administrative remedies available before the

_____

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted an administrative hearing on November 17, 2004 (R. 236-256) and

issued a decision unfavorable to Plaintiff on June 30, 2005. (R. 11-20.)  The Appeals

Council denied Plaintiff's request for review on March 31, 2006. (R. 5-7.)  On June 5,

2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[4] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[5] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

---

[2] <u>See</u> 42 U.S.C. § 405(g).

[3] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

RFC, age, education, and past work) prevent her from doing other work that exists in

the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work

initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently exists in the

national economy.[16] The Commissioner may satisfy this burden by pointing to the grids

for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has

a non-exertional impairment which significantly limits his or her basic work skills or when

the claimant cannot perform a full range of employment at the appropriate level of

exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III.  SUMMARY OF THE EVIDENCE

Plaintiff was born on June 3, 1957and was forty-seven (47) years old at the time of the decision. (R. 240.) Plaintiff has a tenth grade education (R. 85) and has past relevant work history as a laborer in Lowe's warehouse, and in landscaping and farm work. (R. 70, 75, 86-89, 240.)  Plaintiff contends that he became disabled on March 1, 2000 due to back and right leg injuries, two surgeries, headaches, fatigue, depression, asthma, cerebrovascular accident, and vision deficits. (R. 50-53, 69, 83-85, 94-97, 224-227.)

---

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from lumbar spine pseudoarthritis, status-post laminectomy and fusion, chronic lower back pain, pain disorder and depression. (R. 19.)

The medical evidence documents Plaintiff's treatment for back pain and left leg pain with worker's compensation physician, Michael MacMillan, M.D. (R. 110-134, 231-214.) Plaintiff first saw Dr. MacMillan on February 18, 2000, at which time Dr. MacMillan noted that Plaintiff had suffered from a back injury in 1995, and had reinjured his back at work in February,1999, when Plaintiff was "performing lifting at work." At that time, Plaintiff was diagnosed with lumbosacral strain with the MRI evidence of an anterolisthesis at L5 and S1. Despite having received treatment, Plaintiff presented to Dr. MacMillan with "persistent symptoms" of pain "across his whole back," which became worse with "virtually all activities, including sitting, standing, bending and twisting." Plaintiff reported some relief with lying down. Dr. MacMillan opined that Plaintiff was "incapacitated by low back pain" and Dr. MacMillan restricted Plaintiff to "half-time, light duty work." (R. 133-134.)

Plaintiff returned to Dr. MacMillan on March 24, 2000, with continued "significant pain." Dr. MacMillan opined that Plaintiff had "failed physical therapy" and "stands with great difficulty." Dr. MacMillan determined that Plaintiff was a candidate for a percutaneous fusion of L5-S1 and that Plaintiff "will be off work until after surgery." (R. 132.)

On November 17, 2000, Plaintiff again complained to Dr. MacMillan of "persistent low back pain...with advanced symptoms." Plaintiff reported the back pain prevented him from sitting or standing too long. Dr. MacMillan opined that Plaintiff might "benefit

from rebone grafting the laterla gutters in order to achieve solid bony union." Plaintiff

was placed off work until after surgery. (R. 126.) On December 4, 2000, Dr. MacMillan

opined that Plaintiff's L5-S1 percutaneous fusion failed, and Plaintiff was "unable to

work until further notice." (R. 125.) Dr. MacMillan scheduled Plaintiff for an open fusion

with bone graft, which was conducted on December 5, 2000 at Florida Hospital. (R.

124.)

On February 23, 2001, at Plaintiff's follow-up visit with Dr. MacMillan following

the bone graft, Plaintiff reported continued postoperative back pain. Dr. MacMillan

prescribed gradual physical therapy and modalities. Plaintiff was continued "off work."

(R. 122.) As of April 20, 2001, Dr. MacMillan reported that there was still no evidence of

fusion on Plaintiff's CT scan. Plaintiff reported mid to low back pain. Due to the absence

of fusion, Dr. MacMillan recommended a combination of posterior stabilization with

anterior autologous grafting. Plaintiff was continued "off work." On November 13, 2001,

Dr. MacMillan noted that Plaintiff appeared to have pseudoarthrosis[23] and Dr. MacMillan

recommended the use of a bone stimulator. (R. 116.)

On June 7, 2002, Dr. MacMillan noted that Plaintiff preferred to forego surgery,

and that due to the bone stimulator, Plaintiff did have some periods of time when his

pain improved, but that it returned when he walked on hard surfaces. (R. 112.)

As of Plaintiff's August 20, 2002 visit with Dr. MacMillan, Plaintiff reported "some

episodes of decreased pain," but that "generally, his symptoms are the same." Dr.

MacMillan felt that there had been some progress with the bone growth stimulator, but

---

[23] Pseudoarthrosis is the "failure of spinal fusion to occur following surgery." *Taber's Cyclopedic Medical Dictionary*, 1583 (18th ed. 1997).

that "the patient has not symptomatically improved...." (R. 110.) Dr. MacMillan noted that there was no change in Plaintiff's work status.

Plaintiff returned to Dr. MacMillan on April 15, 2003, Plaintiff reported no significant improvement, but that he had not become worse either. Upon examination, Dr. MacMillan found that Plaintiff was "diffusely hyporeflexive" and maintained Plaintiff on a no-work status. (R. 214.) On December 9, 2003, Plaintiff again saw Dr. MacMillan with complaints of persistent pain on the left side of the low back.  Dr. MacMillan noted that L5-S1 was fused and noted "reactive changes in the left sacroilliac joint." Dr. MacMillan opined that it may be irritation of the left sacroilliac joint that is responsible for his pain.  Dr. MacMillan again continued Plaintiff on a no-work status.

At the request of the state agency, Plaintiff underwent a consultative psychological evaluation with Tab Hollawager, M.S., LMHC, and David Zelbovitz, Psy.D., on November 27, 2002, as well as a consultative physical examination with Donald Tindall, M.D., on April 29, 2003. (R. 163-166, 195-196.) Additionally, the ALJ ordered a consultative evaluation which was conducted by James P. Ryan IV, M.D., on February 23, 2005. (R. 215-223.)

Drs. Hollawager and Zelbovitz evaluated Plaintiff on November 27, 2002. Plaintiff was found to have a working memory in the low-average range, an ability to learn and remember new material in the low-average range and the ability to engage in auditory learning in the low-average range. Plaintiff had no difficulties in retrieving orally presented information, in retaining information, or in retrieval of information. (R. 165-166.) Drs. Hollawager and Zelbovitz diagnosed Plaintiff with Pain Disorder Associated with Psychological Factors and a General Medical Condition, and Depressive Disorder.

Plaintiff's prognosis was deemed to be poor. Plaintiff's results were deemed to be "free of any deliberate attempts to present a distorted picture." Plaintiff was recommended to receive psychiatric evaluation as well as participation in outpatient psychotherapy to learn how to cope with his depression. (R. 166.)

Plaintiff was evaluated by Dr. Tindall on April 29, 2003. Dr. Tindall noted that he had no notes detailing the surgery available for review.  Plaintiff complained of "constant low back pain radiating into the left calf with numbness and tingling over the calf and plantar surface of the left foot." Plaintiff also reported that the "low back pain worsens with prolonged sitting, standing and walking as well as bending and twisting." Plaintiff reported that his left leg gives out occasionally, which resulted in two falls. (R. 195.)

Plaintiff told Dr. Tindall that he could sit comfortably for twenty minutes, stand for fifteen minutes at a time, and walk about one and a half blocks before having to stop and rest. Plaintiff reported that he could lift about 15 pounds. Plaintiff stated that he can cook, wash dishes, dust and make the bed. However, the Plaintiff does not do any  yard work. Plaintiff stated that he can drive for about 40 minutes at a time. Plaintiff can take care of his daily grooming needs.

Dr. Tindall found that Plaintiff had right and left paraspinous muscle spasm at T12-L4, with diffuse lower lumbar tenderness. Plaintiff had positive left sitting root and sciatic nerve stretch signs, and decreased sensation over the left calf and plantar surface of the left foot. Dr. Wilson stated that in his opinion, "Mr. Wilson lacks the functional capacity to do farm and factory work and work as a welder as he has done in the past."

Plaintiff underwent a consultative examination with Dr. Ryan on February 21, 2005. Dr. Ryan opined that Plaintiff has "chronic pain due to pseudoarthrosis, which has not responded to surgical procedures." Dr. Ryan stated that Plaintiff "may perform only sedentary work which does not require prolonged standing or walking." (R. 216.) Dr. Ryan completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) (R. 220), and specified restrictions of lifting/carrying no more than 10 pounds occasionally and less than 10 pounds frequently; standing/walking less than 2 hours in an 8-hour work day; limited pushing/pulling with the lower extremities; never climbing, kneeling, crouching or stooping; and only occasionally balancing. (R. 220-223.)

State agency consultants reviewed the medical evidence available and completed Physical Residual Functional Capacity Assessment forms and Psychiatric Review Technique forms.  On November 11, 2002, Jim Takach, M.D. found that Plaintiff could lift 10 pounds occasionally and frequently, stand at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. Further, Plaintiff has an unlimited ability to push/pull, and has only the occasional ability to perform postural activities. (R. 155-157.)

However, on May 27, 2003, the state agency physician, Edward W. Holifield, M.D., found that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand/walk and sit 6 hours in an 8-hour workday, and could occasionally perform postural activities. (R. 198-199.) Both the psychiatrist and psychologist found that Plaintiff has a depressive disorder and pain disorder, but that they are non-severe impairments that impose no more than mild limitations. (R.167-180, 181-194.)

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred in several respects. The Court will first address Plaintiff's argument that the ALJ erred in discrediting the opinion of Dr. MacMillan, Plaintiff's treating physician, because the error impacts the ALJ's RFC analysis, thus requiring that the action be reversed and remanded so that the ALJ can conduct a new RFC analysis. Secondly, and in the alternative, the Court will address the argument that the Commissioner erred in relying upon the opinion of a VE who offered his opinion based upon a hypothetical question that was incomplete and inconsistent with the ALJ's RFC assessment.

According to Plaintiff, it was improper for the ALJ to fail "to even acknowledge Dr. MacMillan's opinion regarding Mr. Wilson's work status, much less provide any explanation for his obvious rejection of this opinion."[24]  In addition, Plaintiff argues that as support for his credibility finding, the ALJ relied upon information that was not supported by substantial evidence in the record.

For example - without support in the record - the ALJ recited in his decision that: (i) no treating physician "expressed an opinion regarding the claimant's functional capacity or on the issue of disability;" (ii) claimant complained of 8/10 neck pain and shortness of breath"; and (iii) "progress notes from Dr. MacMillan suggested that the intensity of claimant's symptoms varied and that the bone stimulator caused some

---

[24] Doc. 11.

improvement."[25] These statements are wholly unsupported by the evidence in the record.

Despite Plaintiff's long history of treatment with Dr. MacMillan for constant back pain, the ALJ essentially ignored the majority of Dr. MacMillan's progress notes and instead focused on a single isolated statement from a progress note dated August 20, 2002, in which Dr. MacMillan states that "there has been some definite progress with the bone growth stimulator." The ALJ failed to mention that in the same progress note Dr. MacMillan also stated that Plaintiff "had a paucity of bone graft and has increased symptoms," that Plaintiff noticed "some episodes of decreased pain," but that generally "his symptoms are the same" and that Plaintiff had "not symptomatically improved."

Further - apparently ignoring the majority of Dr. MacMillan's medical notes - the ALJ incorrectly stated that no treating physician had ever issued an opinion regarding Plaintiff's disability. In stark contrast to the ALJ's statement, Dr. MacMillan's notes disclose that he repeatedly, over the course of at least 2 years, opined that Plaintiff was to remain off-work due to his constant pain. While the ultimate determination of disability is made by the ALJ and not by a physician, the ALJ's statement that no treating physician had ever offered an opinion on Plaintiff's disability simply ignores the medical notes of Dr. McMillian.

In addition to the lack of support for the ALJ's statement that no treating physician had ever issued an opinion regarding Plaintiff's disability, the ALJ erred in making his credibility determination by incorrectly relying upon testimony that does not

---

[25] R. 17.

12

even appear in the transcript of the hearing. The ALJ stated that Plaintiff testified at the hearing that he suffered from 8/10 neck pain and shortness of breath. However, the transcript of the hearing does not contain any testimony by Plaintiff of such complaints nor does the Disability Report submitted to the Social Security Administration by Plaintiff contain any mention of such ailments.[26]

In his decision, the ALJ concluded that the evidence "did not support the claimant's allegations of the intensity and persistence of such pain and other symptoms." However, other than the ALJ's unsupported statements regarding neck pain and shortness of breath, the ALJ failed to cite any further reasons or evidence to support his decision to reject Plaintiff's credibility with regard to pain. The ALJ's analysis essentially ignores the more than two years of medical progress notes from Dr. MacMillan documenting with objective medical evidence the persistence and intensity of Plaintiff's pain. In addition to the two surgeries Plaintiff underwent, the x-rays from Plaintiff's December 9, 2003 visit with Dr. Macmillan revealed that Plaintiff was having reactive changes in the left sacroiliac joint, which Dr. MacMillan opined might be responsible for Plaintiff's pain.[27]

Accordingly, for these reasons, the Court finds that the ALJ's RFC assessment is not supported by substantial evidence and that the ALJ erred by improperly relying upon inaccurate statements regarding Plaintiff's alleged symptoms and failing to properly consider the medical evidence regarding Plaintiff's persistent pain.

---

[26] R. 68-106.

[27] R. 213.

In addition to the ALJ's error in determining Plaintiff's RFC, the ALJ also erred with regard to the hypothetical question posed to the VE. According to Plaintiff, the ALJ erred in relying upon VE testimony based upon hypothetical questions that were inconsistent with the ALJ's own RFC findings. Moreover, in concluding that there were significant jobs available in the national economy that Plaintiff could preform, the VE incorrectly relied upon jobs performed at the light exertional level rather than at the sedentary level, which is the RFC level that the ALJ found that Plaintiff could perform work.

In assessing Plaintiff's RFC the ALJ found that Plaintiff "has moderate limitations of....concentration, persistence or pace"[28] and that Plaintiff is limited to sedentary work.[29] However, in the hypothetical posed by the ALJ to the VE, the ALJ stated that the VE should "assume that we're looking at unskilled light or sedentary jobs."[30] Moreover, the ALJ never included in any hypothetical posed to the VE that Plaintiff has moderate limitations of concentration, persistence or pace. The hypothetical posed to the VE by

---

[28] R. 17.

[29] R. 18. Sedentary work entails:

The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p, *found at* 1996 WL 374185 (S.S.A. 1996).

[30] R. 251-252.

the ALJ is clearly inconsistent with the ALJ's RFC analysis and, therefore, constitutes

reversible error, requiring reversal and remand of this action so that the ALJ can pose a

correct hypothetical to the VE consistent with the ALJ's own RFC assessment.

Accordingly, even assuming *arguendo* that the ALJ did not commit error in determining

Plaintiff's RFC, the ALJ nonetheless erred by posing a hypothetical to the VE that was

inconsistent with the ALJ's RFC finding.

Moreover, apparently recognizing that the jobs discussed by the VE were at the

light exertional level - and not at the sedentary level - the ALJ also erred by failing to

mention the specific jobs that Plaintiff can perform, as required by Social Security Rule

83-14. [31] The failure to list any occupations that the claimant could perform despite his

impairments constitutes reversible legal error.[32]

Lastly, even if the ALJ had presented a complete hypothetical to the VE, the VE's

testimony conflicts with the DOT. Pursuant to Social Security Rule 00-4p, the Social

Security Administration recognizes that the VE's testimony generally should be

consistent with the information contained in the DOT.[33] Accordingly, when an apparent

conflict between the two arises, the SSR directs the ALJ to "elicit a reasonable

---

[31] Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

SSR 83-14, *found at* 1983 WL 31254 (S.S.A. 1983).

[32] *See* Tregler v. Barnhart, 414 F.Supp.2d 862, 868 (N.D.Ill. 2006). (The court found that the ALJ's failure to list in his decision any specific occupations that the claimant could perform was reversible legal error, requiring remand.)

[33] *See* SSR 00-4p.

15

explanation for the conflict before relying on the VE's testimony."[34] The ALJ is required

to inquire on the record as to whether there are any inconsistencies between a VE's

testimony and the DOT. Moreover, before the ALJ can rely on the VE's testimony as

substantial evidence for his or her determination, the ALJ must resolve any conflict

between the VE's testimony and the DOT.[35] While the Eleventh Circuit has not

addressed SSR 00-4p, other courts have interpreted SSR 00-4p to require the ALJ to

elicit a "reasonable explanation" for such a conflict.[36]

The ALJ found that Plaintiff is restricted to "simple, unskilled tasks."[37] According

to the DOT, only reasoning level 1 jobs can be performed by an individual who can

understand and carry out simple instructions. However, the VE testified that Plaintiff

could perform the jobs of delivery driver, a reasoning level 2 job, and cashier, a

reasoning level 3 job.  Level 2 jobs require an individual to understand and carry out

detailed but uninvolved written or oral instructions, and level 3 jobs require even more

complex abilities.[38]  Notwithstanding this apparent inconsistency, the ALJ failed to elicit

any testimony from the VE regarding this apparent conflict.[39]  Accordingly, on remand in

---

[34] Id.

[35] Id.

[36] *See* Hackett v. Barnhart, 395 F.3d 1168 (10th Cir.2005); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d. Cir.2005); Estrada v. Barnhart, 417 F.Supp.2d 1299, 1303 (11th Cir.2006); Leonard v. Astrue, 2007 WL 1114009 (M.D.Fla. 2007).

[37] R. 19.

[38] Doc. 11. Plaintiff attached a copy of Appendix C to the DOT, which is the "Components of the Definition Trailer."

[39] *See* Leonard v. Astrue, 2007 WL 1114009 (M.D.Fla.2007) (the Court reversed and remanded the Commissioner's decision where the ALJ's assessment that a claimant could perform simple, repetitive tasks was in conflict with a VE's testimony that claimant could perform a reasoning level 3 job, and the
(continued...)

16

the event there is a conflict between the testimony of the VE and the DOT, the ALJ

should elicit testimony to resolve any conflict as required by SSR 00-4p.

## V.  CONCLUSION

For the reasons discussed above, this action is due to be **REVERSED AND**

**REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42

U.S.C. § 405(g) for the Commissioner to conduct further proceedings consistent with

this Order and to conduct any additional proceedings the Commissioner deems

appropriate. The Clerk is directed to enter final judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on June 7, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
        All Counsel

---

[39](...continued)
ALJ elicited no testimony regarding this conflict).